JOURNAL ENTRY AND OPINION
{¶ 1} Tijuan Day appeals a judgment of the trial court entered pursuant to a jury verdict finding him guilty of two counts of felonious assault with firearm specifications and of having a weapon while under disability. On appeal, he assigns the following errors for our review:
 {¶ 2} I. APPELLANT TIJUAN DAY WAS DENIED A FAIR TRIAL DUE TO INEFFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 3} II. THE WAS (SIC) INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION ON ALL COUNTS.
 {¶ 4} III. THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
{¶ 5} Having reviewed the arguments of the parties and the pertinent law, we affirm the judgment of the trial court for the reasons deduced below.
{¶ 6} The record reveals the victim, Timothy Randle, entered a parking lot at E. 40th Street in Cleveland, Ohio, at the Outhwaite Home Estates at approximately 11:20 p.m. on October 20, 2000 to watch a boxing match on television. Upon his arrival, he became engaged in a physical altercation with someone named "Man" over a female also at that location. Randle was struck repeatedly. He testified several other people joined the fight and continued to hit and stomp him. He also testified Day was present. Randle stated his uncle, Jonathon Dickerson, arrived and put him in his vehicle. As they drove away, Randle was shot in the lip. He testified he did not know who shot him or his uncle.
{¶ 7} Dickerson testified he received two phone calls that night advising him that his nephew was involved in a fight. He went to investigate and found an incoherent Randle leaning against a building; he put Randle in his vehicle. As he began to leave, he heard gun shots. He stated the shots came from the direction of the dumpsters where he saw a gun fire three times. One of the bullets hit his shoulder. He then drove to the hospital.
{¶ 8} At the hospital, Dickerson was shown six photographs. He stated the last photo most resembled the man who shot him. During trial, he stated he saw the face of the shooter and identified Day as that person, and the person he identified from the photograph. He further testified he was sure Day was the individual that shot him.
{¶ 9} Next, Jenee Hunter testified she had been at Outhwaite approximately 11:20 p.m. visiting a friend. As Dickerson began to leave, she saw Day ride a bike towards Dickerson's vehicle and shoot. She stated Day was the only person with a gun that night.
{¶ 10} Cleveland Police Detective Richard Maruniak testified his investigation produced the name of Tijuan Day as a suspect in this shooting. Day was arrested and told Officer Maruniak he was there when "Man" and Randle fought; he saw Dickerson arrive and that Dickerson was yelling at everyone, wanting to know who beat up his nephew. Day testified Dickerson had a gun and waived it around. He further stated to Officer Maruniak that some men from Longwood started shooting and Dickerson returned fire. At that time Day said he ran, leaving the area. To Officer Maruniak, Day denied involvement in the shooting. At the end of Officer Maruniak's testimony, the State rested its case.
{¶ 11} Defense counsel did not make a Crim.R. 29 motion and instead, called Patricia Simmon to the stand. Simmon testified she was cleaning up after a cookout she held and witnessed a fight between Randle and "Man." She verified several other men joined in the fight; Day was present; Dickerson pulled into the parking lot to retrieve Randle; and when the shooting started, Day ran behind the dumpster.
{¶ 12} Janae Thompson next testified she attended Simmon's party and witnessed the altercation between Randle and "Man." She further testified when Dickerson exited his vehicle, he brandished a gun and demanded to know who attacked Randle. Thompson also placed Day behind the dumpsters at the time of the shooting.
{¶ 13} Johnita McGee, Day's fiancé and mother of his child, also witnessed the altercation. She testified Day was behind the dumpster with her at the time of the shooting.
{¶ 14} Finally, Kenisha Atkinson testified she was also at the party, and that Day was behind the dumpster with her and McGee. The defense rested without moving for an acquittal.
{¶ 15} In his first assignment of error, Day argues he was denied effective assistance of counsel because his counsel failed to object during the course of the trial, failed to move for an acquittal, and failed to file a motion to suppress the identification of Day as the shooter.
{¶ 16} In Strickland v. Washington,[1] the Court established a two-part test for consideration in addressing claims of ineffective assistance of counsel:
 {¶ 17} * * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.
{¶ 18} In State v. Bradley,[2] the court stated:
 {¶ 19} In order to show prejudice, the defendant must demonstrate a reasonable probability exists that, absent counsel's error, the result of the trial would have been different.
{¶ 20} Regarding defense counsel's failure to object during trial, we conclude based on the record, he had no solid basis for objecting; and therefore Day had not been prejudiced. Further, if the trial court determined after the close of the State's case there was insufficient evidence to convict Day, it could have, sua sponte, dismissed the case even if counsel failed to move for acquittal.[3]
{¶ 21} Regarding counsel's failure to move to suppress the identification, we note Dickerson not only identified Day through a photo array but also identified him in court. Hunter identified Day as the shooter in court as well. Based on these identifications, even if counsel had moved to suppress the photo identification, the in-court identification sufficiently established Day as the shooter. Day offers no evidence supporting his claim that had counsel moved for acquittal and suppression of the identification the outcome of the trial would have been different. Accordingly, this assignment of error is without merit.
{¶ 22} Day next argues sufficiency and manifest weight of the evidence.
The test for sufficiency of the evidence raises a question of law to be decided by the court before the jury may receive and consider the evidence of the claimed offense. In State v. Jenks,[4] the court stated:
 {¶ 23} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Citations omitted.) (Emphasis added.)
{¶ 24} In this case, the State assumed the burden of proving Day's guilt beyond a reasonable doubt for the crimes of felonious assault with a firearm specification and having a weapon while under a disability. Felonious assault prohibits another from knowingly causing or attempting to cause physical harm by means of a deadly weapon.[5] In this regard, Dickerson testified Day was the person who shot him, and he identified Day through a photo array and in court. Additionally, Hunter testified she saw Day pull out a gun and shoot at Dickerson's vehicle. The State's evidence showed Dickerson with a gunshot wound to his shoulder. Consequently, the evidence viewed in a light most favorable to the State establishes beyond a reasonable doubt that Day shot Dickerson.
{¶ 25} Regarding the manifest weight of the evidence, the court in State v. Martin,[6] stated:
 {¶ 26} The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
{¶ 27} Additionally, the court in State v. Thompkins,[7] stated:
 {¶ 28} Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
{¶ 29} Further, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.[8]
After reviewing the entire record in this case, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot conclude that in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. The State showed Dickerson was shot in the shoulder. Dickerson identified Day as the shooter. The State presented Jenee Hunter who testified that Day rode his bike towards Dickerson and shot at him. In a position to judge the credibility of the witnesses, the jury found Hunter more credible than the defense witness who stated Day was behind the dumpster, unarmed. As the thirteenth juror, we cannot say from this record that the jury was wrong in its conclusion. By all accounts, Day was there when the fight occurred and when the shots were fired, and two people said he was the shooter. Accordingly, Day's assigned errors are not well taken.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., and ANN DYKE, J., CONCUR.
[1] (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.
[2] (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.
[3] See Crim.R. 29(A).
[4] (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
[5] R.C. 2903.11(A)(2).
[6] (1983), 20 Ohio App.3d 172, 485 N.E.2d 717.
[7] 78 Ohio St.3d 380, 1997-Ohio-52.
[8] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.